IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| KIBYA DOUGLAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: |
| vs. | ) | |
| | ) | |
| | ) | |
| LINCOLN MUTUAL ASSURANCE COMPANY OF BOSTON | ) | |
| | ) | |
| Serve: MO Dept. of Insurance<br>301 W. High St. #630<br>Jefferson City, MO 65101 | ) | |
| | ) | |
| Defendant. | ) | |

COMPLAINT
EMPLOYEE RETIREMENT INCOME SECURITY ACT

COMES NOW Plaintiff Kibya Douglas, by and through undersigned counsel, pursuant to the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. §1001 *et. seq*. (ERISA), and for her cause of action against Defendant Lincoln Life Assurance Company of Boston (hereinafter "Lincoln"), respectfully states the following:

1. Plaintiff Kibya Douglas (hereinafter "Ms. Douglas") brings this action against Defendant Lincoln for damages caused by the Lincoln's breach of statutory, contractual and fiduciary obligations and violations of the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. § 1001 *et. seq.* ("ERISA").

2. This is an action brought pursuant to 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331. Under 29 U.S.C. §1132(f), the Court has jurisdiction without respect to the amount in controversy or the citizenship of the parties.

3. Venue is proper in this District pursuant to 29 U.S.C. §1132(e)(2), in that the subject employee welfare benefit plan and employee insurance program are administered in this District, the breaches of duty herein alleged occurred in this District, and Lincoln resides or is found in this District.

**Parties**

4. Ms. Douglas is an individual residing in City of St. Louis, in the Eastern District of Missouri. Ms. Douglas is a vested participant in a Group Insurance Policy for certain employees of Wal-Mart, which provides an employee benefit plan within the meaning of 29 U.S.C. § 1132(a).

5. Defendant Lincoln administers benefits for certain employees of Wal-Mart under an employee welfare benefit plan (hereinafter "Plan") within the meaning of 29 U.S.C. § 1002. Specifically, Lincoln makes determinations regarding who is entitled to long term disability benefits (hereinafter "LTD") under the Plan.

6. Defendant Lincoln administers and pays benefits under the terms of the Plan and is a fiduciary within the meaning of 29 U.S.C. §1002(16).

7. Wal-Mart serves as the plan administrator and sponsor under the meaning of 29 U.S.C. §1002(16).

8. Pursuant to the express language of the Plan, the Plan was issued in Arkansas in 2016 and is subject to the laws of Arkansas.

9. The laws and regulations of Arkansas govern this matter.

10. Pursuant to the laws and regulations of Arkansas – principally Ark. Code Ann. §23-61-108, Ark. Code Ann. § 23-66-207, Ark. Code Ann. § 25-15-204, which apply to and govern the Plan – the Plan may not contain a provision purporting to reserve discretion to the insurer to interpret the terms of the contract, or to provide standards of interpretation or review that are inconsistent with the laws of Arkansas.

11. The standard of review in this case is *de novo.*

**Count I**
**Denial of Benefits Pursuant to 29 U.S.C. §1132(a)(1)(b)**

12. Ms. Douglas became disabled in 2017 and was forced to stop working following a stroke.

13. As a result of the stroke, Ms. Douglas has experienced deficits in higher order cognition, cognitive flexibility, and mild psychomotor deficits in her non-dominant hand.

14. Ms. Douglas has deficiencies in her motor skills as a result of the stroke.

15. At the time Ms. Douglas was forced to stop working, Ms. Douglas was an eligible employee under the Plan and entitled to long term disability benefits.

16. Ms. Douglas applied for long term disability benefits under the Plan on April 18, 2017.

17. Lincoln initially denied Ms. Douglas' application for benefits in a letter dated December 6, 2017.

18. In its denial letter, Lincoln relied upon "Plan language" regarding pre-existing conditions to justify its denial of Ms. Douglas' benefits. The "Plan language" relied upon was not included in the Plan document.

19. Ms. Douglas' stroke and her resulting disability do not constitute a pre-existing condition under the actual Plan language relating to the same.

20. Ms. Douglas appealed Lincoln's December 6, 2017 denial of long-term disability benefits and Lincoln reversed its decision and awarded Ms. Douglas long term disability benefits.

21. Lincoln paid Ms. Douglas long-term disability benefits under the Plan from October 17, 2017 through April 16, 2019.

22. In a letter dated December 14, 2019, Lincoln denied to pay Ms. Douglas payment of long-term disability benefits beyond April 16, 2019, stating that Ms. Douglas no longer met the definition of disabled under the policy.

23. Ms. Douglas filed a timely appeal of Lincoln's denial of long term disability benefits beyond April 16, 2019.

24. In support of her appeal Ms. Douglas submitted medical records from her treating physicians.

25. The medical records submitted in support of her appeal indicate that Ms. Douglas was suffering from cognitive deficiencies arising from the 2017 stroke, including, but not limited to, "moderate difficulties in high level attention for follow through with tasks" and that she demonstrated "deficits in higher order cognition including rapid processing of complex information, information encoding for a list of words and subsequent recall, concept formation, cognitive flexibility, and mild psychomotor deficits," long term memory, as well as on going depression and anxiety related to her decreased cognitive capabilities.

26. The medical records further indicate that Ms. Douglas was suffering from physical defects from the stroke including "neurologic pain in left lower extremity significantly impacting her tasks," weakness and pain in her left upper extremity, and difficulties with ambulation.

27. Also included in her medical records are the stated opinions of her medical providers that Ms. Douglas was unfit to return to work.

28. Despite presenting objective medical evidence indicating that she is completely disabled and unable to work, Lincoln denied Ms. Douglas's appeal of its denial of long-term disability benefits.

29. At all relevant times, Ms. Douglas has been under the care of licensed medical doctors.

30. As a result of the wrongful denial, Ms. Douglas has been damaged in the amount of unpaid benefits.

31. Ms. Douglas has exhausted all available administrative remedies.

32. Lincoln's denial of long-term disability benefits was arbitrary and capricious, and not based on substantial evidence, was a breach of its fiduciary duties and was the product of a conflict of interest and serious procedural irregularities.

33. Defendant is required to pay the benefits due under the terms of the Plan, together with prejudgment interest, attorneys' fees and costs.

WHEREFORE, Plaintiff Kibya Douglas respectfully prays for judgment against Defendant Lincoln Life Assurance Company of Boston in the amount of unpaid past and future benefits, interest on past due sums, attorneys' fees and costs, and for any other such relief as the Court deems just and proper under the circumstances.

## COUNT II
## Breach Of Fiduciary Duty Pursuant To 29 U.S.C. §1132(A)(3)

34. Ms. Douglas incorporates and adopts by reference paragraphs 1-32 above as if fully set forth herein.

35. Ms. Douglas also brings this claim against Lincoln under 29 U.S.C. § 1132(A)(3), which permits a participant to bring an action to enjoin any act or practice that violates ERISA or the terms of the Plan or to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of ERISA or the terms of the Plan.

36. Lincoln had a financial interest in denying Ms. Douglas' benefits.

37. In determining benefits under the Plan, Lincoln, acting as a fiduciary in the administration of Ms. Douglas' claim:

a. Failed to adequately consider the facts and circumstances regarding Ms. Douglas' claim;

b. Failed to adequately investigate the facts supporting Ms. Douglas' Claim;

c. Relied upon a biased medical records review to deny Ms. Douglas' benefits.

38. Defendant Lincoln has failed to provide Ms. Douglas a full and fair review of her claim, and in failing to do so put its financial interests ahead of Ms. Douglas' – Its fiduciary.

**Independent Medical Records Review**

39. In its review of Ms. Douglas' claim, Lincoln had Ms. Douglas' medical records reviewed by two "Independent" Physicians.

40. Both physicians had a financial relationship with Lincoln predicated upon providing opinions favorable to Lincoln and adverse to Plan beneficiaries, such as Ms. Douglas.

41. Because of the nature of the above relationship, the medical records review was inherently biased against Ms. Douglas with the predetermined outcome of denying her benefits.

42. Neither physician performed a physical or an in-person evaluation of Ms. Douglas or spoke with her treating physicians to gain insight into Ms. Douglas' care or needs.

43. By relying on the biased medical records review to deny Ms. Douglas' benefits, Lincoln failed to carefully consider Ms. Douglas' claim and chose to base its denial on speculation and conjecture.

44. Lincoln, as fiduciary, did not act with care, skill, prudence and diligence in performing a review of Ms. Douglas' records.

45. Lincoln failed to carefully consider Ms. Douglas' claim.

46. Lincoln breached its fiduciary duties, insofar as it failed to discharge its duties in handling Ms. Douglas' benefits claim in a careful, skillful, and diligent manner.

47. Defendant operated under a conflict of interest due to the fact that it had a financial incentive to terminate and deny Ms. Douglas' ongoing long-term disability benefits.

48. When adjudicating Ms. Douglas' claims for continued disability benefits, Lincoln breached its fiduciary duty in that it:

a. Refused to consider the medical evidence documenting Ms. Douglas' restrictions and limitations;

b. Employed an unfair, incomplete and biased process that was designed to create evidence to support a denial of benefits and ignore evidence that supported an award of benefits; and

c. Failed to decide the claim and appeal in a manner that ensured the independence and impartiality of the people involved in making the benefit determination, specifically using a medical reviewers who had financial incentives to deny claims in order to maintain a business relationship with Lincoln.

49. Lincoln breached its fiduciary duties under ERISA §404, 29 U.S.C. §1104, insofar as it failed to discharge its duties with respect to the Plan solely in the interest of Ms. Douglas, a beneficiary, and for the exclusive purpose of providing benefits to participants and to act in accordance with the documents and instruments governing the Plan.

50. Ms. Douglas has been unjustly denied benefits and is now left with a total loss of long-term disability benefits, creating such an injustice as to warrant the enforcement of benefits promised to Ms. Douglas by Lincoln.

51. The allegations above merit the imposition of an equitable relief under 29 U.S.C. §1132(a)(3), including specific performance, equitable estoppel and surcharge, in order to compensate Ms. Douglas for the losses incurred by her and for the unjust enrichment Defendant has realized as a result of its wrongful denial.

WHEREFORE, Plaintiff Kibya Douglas respectfully prays for judgment against Lincoln Life Assurance Company of Boston granting equitable relief, including payment of the amount of unpaid past and future benefits, interest on past due sums, attorneys' fees and costs and for any other such relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

**GALLAGHER DAVIS, L.L.P.**

*/s/ Adam J. Olszeski*
Matthew R. Davis, #MO58205
Adam J. Olszeski, #MO66126
2333 S. Hanley Road
St. Louis, Missouri 63144
(314) 725-1780
Fax: (314) 725-0101
matt@gallagherdavis.com
adam@gallagherdavis.com

*Attorneys for Plaintiff*